of America, 17-56712. Good morning. Good morning. This is the court. I'm James Laughlin. I'm here to represent Fran Monroe. Court's permission, I'd like to reserve two minutes of my time for rebuttal, and I'll keep an eye on it. Okay, there's a lot to talk about. There's been things that have been happening. Yes. But, so, maybe we'll just take it. I know we're going to have a lot of questions, and I'm not sure we can resolve everything here today since what Allen v. Ives has just come out, and we don't know whether that's  what it's going to be. I'm not sure. Okay. All right. All right. All right. All right. I'm not sure what the finality is. I have a question, though, in terms of, in Monroe's 2018 pro se motion to file supplemental briefing, upon which this court granted the certificate of ability, he seemed to argue that Johnson v. the United States, Johnson 2, I'm going to go on, and Sessions v. DeMaia directly apply to his three strikes argument under 18 U.S.C. Section 3559C. So my question on that is, did you abandon that argument in your opening brief? If so, why? And did DeMaia announce a new rule of constitutional law made retroactive to cases on collateral review? I'm sorry. I want to make sure I'm, are you, you're saying, you're talking about the briefing in support of the motion for certificate of appealability? Well, in your opening brief. Okay. So the certificate of ability, certificate of appealability, Johnson's, I mean, Monroe seemed to argue that Johnson 2 and Sessions v. DeMaia apply directly to the three strikes argument. And then, I don't see that really in your opening brief. Yeah. Well, let me say, and I apologize, I haven't reviewed that briefing in a while. My recollection was that our petition, or our seeking a, that our motion for petition for certificate of appealability is not inconsistent with the arguments we made on appeal. So I do see, so I see something, yeah, I see, I see something there. So I had a question of waiver. Do you know whether, what's your position on whether the sentencing judge's three strikes finding is rooted in the enumerated clause of section 350, 3559C, the residual clause, or is it unclear? In this case, I believe it is clearly rooted in the enumerated clause because Judge Stotler issued a written tentative sentencing ruling, which is in the exercise of record in which he cited subsection I, which is the provision of the serious violent felony definition that lists the offenses, and in particular, she quoted, she referenced the robbery as defined in provision. So does the government agree with you on that? I believe they do. So both of you agree that it was clear from what Judge Stotler said, that it was rooted in the enumerated offense clause? I believe there's no dispute between the parties on that. Did you, let me follow up on that because I would, it's my belief in terms of reading the record that it's not entirely clear which clause of 3559C2F Judge Stotler relied on when she determined that the California Penal Code section 211 was a serious violent felony. And one of the things I looked at is the actual transcript of the sentencing. And what she did at that time, she simply adopted the probation officer's justification for the sentence imposed. And the pre-sentence report writer merely concluded that Monroe's life sentence is proper because Monroe had two or more serious violent felonies. Otherwise, the transcript is completely unclear as to which provision she was relying on, whether it's enumerated, force, or residual clause. You follow me? Yes, I do. And I'm probably not suggesting anything to you that you haven't already thought about, but it seems to me that if it is unclear that you would have an argument under Johnson 2, but you seem to have completely waived that argument by conceding that the petition was untimely. The petition would have been timely because it was filed within a year of Johnson 2. Well, certainly, if that's the court's view, I would... Well, no, I'm suggesting that that is a possible way of looking at this, and I'm following up on Judge Callahan's question to make myself clear. Why didn't you pursue that? I mean, why have you abandoned, apparently, that argument? Is it because you're just convinced that she relied on the enumerated clause? That was my conclusion based on the way that it was litigated by the parties at sentencing and the court's resolution of those issues in its written tentative order. But certainly, if the court has a different view, I would request the ability to have the opportunity to file an amended motion on behalf of Mr. Monroe that relates back to the original petition and presents that alternative claim if the court thinks that that's the appropriate avenue to go down. Let's go on in terms of... That was helpful. Other than this court's recent decision in Allen v. Ives, what is your best argument that your claim under Mathis and DeCamp is an actual innocence claim and that those decisions apply retroactively for the purposes of a successive 2255 motion or a 2241 petition? Well, first, with regard, I guess, setting aside Allen v. Ives, I would look to the cases that I cited, including McQuiggin, which, although they use the word actual innocence, it's really a miscarriage of justice gateway, and I think once we look at that, we recognize that miscarriage of justice can apply to a sentencing error as much as a conviction error. As this court recognized in Amelie, an en banc case from several years ago, it's just as much of a miscarriage of justice to impose an illegal sentence as it is to convict an innocent person. So I think that the language in the cases of Boozley and such and McQuiggin is broad enough to encompass sentencing claims like this, particularly when it's a life sentence, something that's just less in severity than the death penalty. You're saying an illegal sentence is actual innocence, and by illegal, you mean an erroneous sentence, not just a sentence of where the statute says what the max is and the judge mistakenly sentences to more than the max. Well, in this case, yes. The situation here, I mean, the court can leave for another day whether a sentence that was an illegal mandatory minimum, but it's still within the maximum, it could be looked at differently. But here we have a case where the maximum for the sentence was 25 years, but for the three-strike statute. Once that kicks in, life sentence is not only authorized, but mandatory. That, I think, under any definition of miscarriage of justice- So you're saying any miscarriage of justice amounts to actual innocence. Any miscarriage of justice of this kind, of this kind of- What kind? Which is, and I want to put it in the context of there being the actual innocence gateway, it being extended to the death penalty by the Supreme Court, and the open question being, what about a sentence that exceeds the statutory maximum? And that's what we have here, even aside from Alan Reibs. Well, what about, unlike in Alan, Monroe filed a second 2255 motion after DeCamp that clearly raised the same argument he made in his third 2255 motion. Doesn't that change the analysis under Alan? No, I don't think so, because in that case- He had the straight shot. No, I don't think so, because by that, this was his third, his first 2255 motion was untimely. The second 2255 motion was rejected as an unauthorized second or successive. So the courts never reached the merits of that claim on that second petition, or even reached the merits of the first claim, so I don't think that- Don't stress about your two minutes, I'll give you two minutes, because I have a lot of questions for you. Okay. Okay, so. Well, what should we do procedurally in this case if a petition or a call for en banc rehearing is granted on Alan B. Ives? Should we wait for that? I would, given that Mr. Monroe has been in custody for 22 years, I would hope not, but I understand, given the court's processes, that the court would probably, if the court feels that Alan v. Ives, which is a very significant to Mr. Monroe's case, is a dispositive case, then it should hold for that. Let me ask you this, too, about, you know, we do get some cases, I'm not going to say, I don't know that your client is the most sympathetic of some cases that I see on a broader spectrum, in terms of, because it's, I can hardly say that his robberies were not violent. I mean, one of the robberies, there's shots fired between two tellers, and other people are asked to undress, they have to pull their pants down, they go, they, I mean, that, and he hasn't committed any crimes for 22 years, but I think we know why he hasn't committed any crimes for 22 years, he's been in custody, but they're pretty violent crimes as far as that goes. So, if, let's say, if you, if the judge did, in fact, sentence, the rooting under the three clause, and we find that you didn't, that that's exactly what happened here, and if your shot is through, if Allen v. Ives stays the same, and you get a shot through that, can the judge still give your client the same sentence, a life sentence? Well, that would depend. Under the court's recent decision in Toriano, it left it, it said that sentencing, judges in granting 2255 or 2241 relief have broad discretion. In that case, it was, there was an error in an ACCA sentence, and the question was whether the judge had to just resentence on that particular count, or all counts, and the court said, judges discretion. So, that would be the first step of the, for the district judge to say, should I sentence just on count two, which has a 25 year maximum, in which case, that would be the maximum, or am I going to open up the entire sentencing package? As the government points out, theoretically, 924C has a lifetime maximum. I have never seen a lifetime maximum in a 924C case, where the mandatory minimum is five years, and somebody has gone, let alone in the guidelines era, of when. But judges sentence, having sentenced a lot of people, I mean, we sentence, it's a little more global than just, you have certain charges in front of you, but judges look at everything that someone did, and everything that they have before. And I know, going back, the judge said, well, I'm sentencing you to a life sentence, because the law says that I have to. Did the judge say, if I didn't have to, I wouldn't give you a life sentence? She did not say that. I feel like that there was a, the transcript reflects a reluctance, because she recognized that, she said, quote, Mr. Monroe is starting to turn his life around, and again, I mean, I think that, particularly, remember, this is back in the pre-booker. Well, I guess what I'm saying, she didn't specifically say, the only reason I am giving you a life sentence is because the law requires, and if I were not required, I would give you X, Y, and Z. She did not say that. Okay. All right. Do any of my colleagues have additional questions? I'll give you two minutes on rebuttal. So as the argument now sits, the only- Can you say her name first? Excuse me? Are you talking to him still, or- Oh, I'm sorry. Oh, do you want him back? Could I do that? Thank you, judge. All right. Okay. I'm sorry. I was looking at my notes, and we changed position here. So the only Johnson 2 argument that you've raised at this point in time is a connection with the, that your client has raised, is a connection with his third 2255 motion filed in 2016. But that was in relation to the count 2 of the 1999 convention, correct? Count 3, the 924C count. Okay. All right. Okay. And so at this point in time, you have not, your client has not raised Johnson 2 in relation to the three strikes, section 211 argument, right? No. No, but again, if the, given this license, if the court thinks that I made an error, and there's a better avenue to, of relief to Mr.- He'll fall on your sword. I will, and if the court gives us the opportunity, we will make whatever changes are necessary. Did you read, I'm just curious, and this is my last question. Did you read the 9th Circuit Memorandum Disposition, and let me get it specifically here, in United States v. Morrison, Morrison, United States v. Morrison, which referred that case, Morrison, back to the trial court, and then the following decision of Judge Sabraw, from the Southern District of California, in Morrison v. United States? Yes, I did. And that's kind of the roadmap for this argument, isn't it? Yes, if Your Honor is correct that the record is unclear, and that it is possible that the sentencing judge, Judge Stotler, in 1999, relied on the residual clause, then it would be the exact situation as Morrison. Well, if it's unclear, we don't know which clause she relied on. Right, and I believe that- And that gets us into Johnson 2. Right, and I believe that under Dizos, as applied in Morrison- Right. Unclarity goes to the defendant. Right. Okay. All right. That's all I have. Thank you, Judge. Good morning. Good morning. Good morning. Ashley All, for the United States. There's a lot to talk about. If I can, I'd like to explain both why the correct resolution of this case remains the same after Allen, and if I have a little bit of extra time to point out that actually, I think applying Allen to this case would, if anything, illuminate some of the reasons why Allen may need to be reconsidered. Before you do that, could you address this issue of what the district court judge relied on, which clause she relied on in 3559 C2F when she determined that this was a serious violent felony? Yes. Mr. Laughlin is correct. It was only based on the enumerated offenses clause. How can you say that? You can look at ER 73, which was the district court's ruling on the defendant's motion to It relies exclusively on the enumerated offenses clause. It references KALUNA, which was a Ninth Circuit opinion at the time. And the challenge the defendant had raised was that robbery did not have the same, frankly, it's very similar to the challenge he's raising now, which is that robbery did not have, the California robbery did not have the same elements as 2111, 2113, and the other federal offenses that are listed in 3559. On that ground, he had sought to strike the allegation, and Judge Stotler ruled on that and overruled it. That's at ER 73. That entire analysis is based entirely on the enumerated offenses clause. With respect to the litigation of this case, Mr. Laughlin has not overlooked something. He's litigated it appropriately. As a result, the only, for instance, timeliness claim that was ever made was based on actual innocence, not 2255 F3. That's at ER 45. And I would note that even in the original application here to file a second or successive petition under 2255H, that's in this court at docket 16-71720. Even in that petition, defendant did not claim that his robbery challenge satisfied 2255H itself. He claimed that his 924C challenge satisfied it, but that as a result, the court should grant authorization with respect to both claims. This has been consistently litigated as an enumerated offenses challenge, and that's accurate under the procedural history of this case, and that's why it is not on all fours with Morrison. That also goes to the core of what our arguments are about timeliness and innocence. Defendant's late and successive 2255 is procedurally barred for two reasons. One, because Mathis and Decomp claims are not cognizable in successive petitions. That's under Ezel and Arizona Galea. Could you say that again? I missed a word. Yeah. Mathis and Decomp claims are not cognizable in successive petitions under Ezel and Arizona Galea. And just as this court held in Blackstone, defendant's petition is untimely regardless of his claim of actual innocence. And I want to emphasize this point, because extending Allen to 2255F and saying that Allen's reasoning says that he's excused from timeliness under 2255F directly contradicts Blackstone. In the final section of Blackstone, this court analyzed a timeliness claim regarding a 924C challenge, and the claim there was that defendant was actually innocent of his 924C conviction after various developments in the law. This court held that that was untimely under 2255F3. There is no way to reconcile that reasoning with what defendant is now arguing today, which is that he's excused from that timeliness bar by the same kind of innocence of a sentencing enhancement. Blackstone compels that defendant's motion was not timely under 2255F3. And regardless of 2255, defendant can't fit through the Savings Clause of 2241, first because he's not actually innocent, as the Supreme Court has defined that, and frankly, even under Allen, and second, because he has had a prior unobstructed procedural shot to litigate his claim. Assuming Allen is the law... So what was his straight shot from your perspective? Frankly, his straight shot was he raised this in the district court. He could... Oh, was that not the question I asked, I think, about whether that he raised de comp previously in his third 2255? That is also true, Your Honor. And the fact that that was barred as successive under IV-V-Pontesso is not sufficient to show  him. But the truth is, the way the case was litigated reflects that he litigated this claim at the time of his sentencing. He not only had a procedural sort of general shot at this, he took that shot, and the district court overruled it, he didn't raise it on direct appeal, and then he raised it years later in a previous 2255. He has had abundant opportunity to litigate this claim, and that it has failed on the merits does not mean that he didn't have the opportunity to do so. In any case, even under Allen, he's not actually innocent. We've put this in the 2255, pardon me, in our 28J letter, and I want to explain why. He cannot show that he couldn't have received this life sentence regardless of the error he claims. And the standard... I think it's no reasonable judge would have imposed the life sentence. That's exactly right. And the truth is, under this record... I understand some reasonable judge might have imposed it because of his very bad robberies. Absolutely. And defendant's argument, as I understand it, is twofold. One is that the court shouldn't take into consideration departures from the guidelines. That's just not true. It is perfectly reasonable that a judge at the time could have departed upwards. And in fact, it's not even that much of a departure upwards. If the court looks at the sentencing table from the time, the range that he was at, which I think is 262 to 327, is only three levels short of a guidelines range that is 360 to life. So from a guidelines perspective, he started very, very close to a life range, which emphasizes the reasonableness, or at least the potentiality, that a reasonable judge could have imposed that sentence. His second argument is that this needs to be considered... You're saying the guideline range ran up to around 30 years? His guidelines range... It did. His guidelines range went up to 327, as it was, without departures, which actually exceeded the stat max on his... The unenhanced stat max on his robbery. I thought his guideline range was lower than that. What was his exact guideline range? I thought it was in the low 200s. That's not correct, Your Honor. It was... I look at it right now. What was it? It was 262 to 327. He had a level 34 and a criminal history category of 6. And he was sentenced to the stat max... And the stat max would have been 25 years. But that's undisputed in the district court. I can't remember if he challenged his career offender status, Your Honor, standing here now. Certainly, there wasn't a lot of litigation about it, because there was the mandatory life sentence in play. How old was he when he was sentenced? 30-ish. But what this court has to determine is that no reasonable judge would have imposed the reasonable sentence to impose life. And that just isn't the case. Defendant's other argument is that this has to be analyzed count by count, so that you can't take into consideration the 924C at all, because the only thing being litigated today is whether what the stat max was on his robbery conviction. And that's incorrect for two reasons. One, Boosley itself recognizes that in analyzing actual innocence, the court doesn't just look to the actual count of conviction, but can look to other counts that the government forewent as the result of plea negotiations, which is to say that because actual innocence goes to factual innocence, it does not necessarily subscribe on a count by count basis in the way the defendant says. It's also, as I thought about it today, it's frankly contrary to the concurrent sentence doctrine. It's well established, for instance, that if defendant had a different count on which he actually had received a life sentence, this court could just summarily affirm under the concurrent sentence doctrine. So it's certainly the case that other counts are in play when analyzing whether or not a defendant is actually innocent. And so for that reason, even under Allen, I submit the defendant cannot establish the kind of actual innocence that is needed. But that said— Don't worry about the time. You can answer, because I went over—we went over with—so you can go— Thank you, Your Honor. I saw you look. That said, I would say extending Allen here—now, Allen is a 2241 decision. Extending it here emphasizes some of the ways in which Allen is irreconcilable with other precedent. It would certainly create a split with the Fourth Circuit in Jones and with the Tenth Circuit, including Justice Gorsuch and Lorson. It would completely shred 2255's timing rules and in that way be inconsistent with this court's published opinion in Blackstone. In particular, while Blackstone was both a mandatory guidelines and a 924C case, but it's very clear the defendant raised an actual innocence challenge vis-a-vis the 924C enhancement, and this court nevertheless found that it was untimely. And it would also underscore some preexisting splits with other circuits about 2241 and the split between Wheeler in the Eleventh Circuit and Alimalo in this circuit. And so I would— Can you tell me, just to kind of recap on this, so the question I have is that procedurally if a petition for or a call for en banc rehearing is granted in Allen, what do you think we should procedurally do? And then I want you to re-summarize your argument about why you think you can win with Allen the way it is right now. Sure. I think there are two options. I think certainly this case could be stayed if there is ultimately a call in Allen. Alternatively, if the court found that Allen, which is published and binding as of present, demanded that there be a particular outcome here, it could follow Allen if it thought it was binding. I don't think it is. And then as a result, potentially have this case also considered en banc. It does illuminate some different aspects of the rule because it extends to 2255 and timing rules. So I think those are really the two options, either a stay or they end up kind of following together on a potential en banc track. And again, my argument as to why Allen isn't controlling is one, because defendant cannot establish actual innocence even under, even assuming actual innocence can extend to sentencing enhancements, which Allen decided, then defendant is still not actually innocent because a reasonable judge could have imposed his life sentence. It was well within reasonability to depart upwards from the guidelines, frankly, somewhat modestly. Is that your prejudice argument? That... And I know that appellant's counsel or petitioner's counsel criticizes you for that, but I think that you did talk about prejudice previously, but then this whole thing is shifted all along, so... It's a... Yes, Your Honor. It's exactly the same argument that we raised in our answering brief, which is that because defendant's life sentence remains legal, that he's not actually innocent. In the reply brief, defendant raised a retort to that, which is that, well, the guidelines were mandatory at the time, and if you took away... The guidelines called for only five years in the 924C, and so our 28J and the argument I've just made really is just illuminating that that retort is not correct, that just because the mandatory guidelines by default called for five years in the 924C, that does not mean that's the only thing the court can consider in determining whether he's actually innocent. So it's the same argument we've made from the outset. Does Judge Stotler's comment that I'm giving you a life sentence because the law requires it, what's your response to that? So I agree with Mr. Laughlin that she did not say that this was the only reason she was imposing the life sentence or that she would have imposed something different. Having not been there, it's hard for me to perceive the same reluctance that Mr. Laughlin identified. It seemed to me like she also made a description of why this was a reasonable sentence. That said, that's not... The test is not prejudice. One of the things that the Supreme Court said is that ultimately there is a difference between actual innocence and standard prejudice analysis. This court all the time and under plain error, for instance, analyzes questions of prejudice. Was it likely that this might have affected the outcome? That is not the standard for actual innocence of a sentence. And in fact, that is exactly what the Supreme Court rejected in Sawyer. And it held that the standard is higher. The standard is, would a reasonable judge have been able to impose the sentence at all? Or stated differently... I think it's a little different. Didn't they say no reasonable judge would have imposed? By clear and convincing evidence that no reasonable judge would have imposed the sentence. And so, in that sense, it looks a little bit like sufficiency review, right? So it's not whether Judge Stotler would have, it's whether no reasonable judge... Correct. Where no reasonable judge would have done so. And on this record, the court cannot conclude that no reasonable judge would have imposed the sentence. To state it differently... So, 262 to 327 months, that's 22 to 27 years, I think. Correct. 30-year-old man. Do you see a difference between 22 years for a 30-year-old man and a lifetime sentence? They're certainly different. But again, the question is whether no reasonable judge would have imposed the life sentence. And looking at the guidelines table, I think makes this somewhat clearer. We're really only... How would a reasonable judge get from a guideline of 262 to 327 months to a lifetime sentence in this case? By taking into account various factors that were not adequately considered by the guidelines. Such as? So, such as the particular terror that he inflicted upon some of his victims. One of his victims testified at the sentencing hearing by taking into account that he got... For instance, it didn't take into account that there were these threats of death to various people at different times, that someone had their head shot right next to... Would this be an upward variance, or would this be a reliance on some departures? It would be departures because it was under the mandatory guidelines, so there were effectively no variances. There were only departures. But departures were available. Oh, okay. That's right. There's... Okay, I'm sorry. Yeah. So, it would have to have been a departure. Correct. We've listed some of them that could have applied, and frankly, there are many that could have applied. And again, the question is, would any, would no reasonable judge have been able to impose the sentence? You keep going over that, and you were about to say it's similar to sufficiency of the evidence. And I want you to finish that thought, because I think you're saying, even if you feel like you want to cut the guy a break, that it's a pretty high standard for defendants to overcome. It's a very high standard, in the same way that sufficiency review is, could any reasonable juror have concluded that someone is guilty beyond a reasonable doubt? And that's a very deferential standard. Here, if anything, the Supreme Court's jurisprudence, analyzing what actual innocence is supposed to mean, underscores the deferential nature of this standard. The question is supposed to be, is this person serving a sentence, even assuming the extent of sentencing, that the law could not have imposed? Is he innocent of his sentence? Is it impossible for him to be serving a life sentence? And the answer to that, as Mr. Laughlin alluded, is no. In fact, even on remand, if this court were to remand in this case, a court could impose the exact same sentence. I don't think it would be subject to challenge as substantively unreasonable. And so the answer to that question has to be that there is a way in which a reasonable judge could have imposed the sentence. Defendant is not actually innocent of a sentencing enhancement, and he's not entitled to relief. I guess we need to keep in mind for that argument, this is not a sentence appeal. This is a claim of actual innocence. Correct, Your Honor. Which underscores why the framework that I submit that defendant has adopted is incorrect. He's not innocent of his sentence. He's not serving, he's not, for instance, sentenced to death in a case in which actually the facts could not possibly have supported that sentence. He's serving a sentence that could be reimposed on remand. And if that's not sufficient to foreclose a claim of actual innocence, I don't know what is. He's not actually innocent of his sentence. It could be reimposed under the same terms. All right, thank you for your argument. Thank you. All right, you have two minutes. I just want to emphasize how much of a jump this court will be taking if it buys into this argument that the government's made in this Rule 28J letter. The idea that the maximum sentence on count to is 25 years. He would be innocent of that if the life sentence is illegal, but you can somehow jump to a completely different count. Where did you get the maximum? What? Where did you get the maximum of 25 years? That's the maximum for an armed bank robbery, but for the federal three strikes law. But the but for is really important here. Right. That's what we're saying. We're saying he no longer has a three strike sentence, and that's why the applicable maximum is 25. But what the government is saying, you can then say, you can jump to the 924C count. I understand what you're saying now, thanks. And to go off of something Judge Christensen said, this isn't whether or not there could be a departure from the 262 range up to life. Remember, because 924Cs are consecutive, they're dealt with separately. It's five years as the guideline range for the 924Cs. So I disagree with counsel. I think certainly under the guidelines era, and even now under the variance era, it would be unreasonable for any judge to look at the facts and the record and say, I'm going to go from five years all the way up to life for this. And I think I quoted in the Rule 28J letter, the Dare case, where in a footnote, the government acknowledged, I mean, the court acknowledged how rare a life sentence, departures up to life sentence, how much that was rare in the Booker era. Well, I'm just wondering why, though, because all of these, every time we expand this, it really goes, I think, against the finality of judgments. And at the time that people are sentenced, the crime is fresh in everyone's mind. And 22 years later, then it's what, if everyone can be, if you can upend everything, if you can't show actual innocence, then it's always like, well, now I think 22 years is enough because you were 30, and now you're 52. And it's, the worst crime 22 years ago has, there's been so many things that have happened, and so it gets forgotten. So if we turn a two-way highway into a freeway, then everyone that's ever been sentenced can be revisited and said, well, I think now it's enough. Well, I guess I disagree with that. I mean, obviously, there has to be some type of significant error that results in a resentencing. And I think this more than qualifies. And two, I mean, I think under the Supreme Court's decision in Pepper, which recognized that any time you have a resentencing, it's got to be based on the facts and circumstances that exist now. If Mr. Monroe is resentenced now, he will be based on not only the crimes committed in the 80s and 90s, but how he's performed in prison over the last 22 years. And that's as it should be. But it, you know, but then he gets to say, well, I haven't committed another robbery for 22 years. Well, he's been locked up. Well, but, Your Honor, I mean. I mean, he was on a pretty good, I mean, these were serious robberies, and he was on a pretty good run. And, you know, part of how he can say he hasn't done anything for 22 years is because he's been incarcerated. And I think we can have faith in our district judges that they're willing, they're able to take those arguments and judge them in the appropriate manner, given. Live a really long time. I'm sorry, what? Article III judges seem to live a really long time. Right, right. So, have I answered Your Honor's question, or? Yes, thank you. Thank you both for your very helpful argument in this. This is a difficult case, and we appreciate your preparedness. We're going to just take a short five-minute break, so if next counsel can come up to the table, then we'll be back for our final argument case. All rise. Court is at recess.
judges: Kleinfeld, Callahan, Christensen